Pete Lewis v. Plaintiff Appellant Michael Faciane v. Sun Life Asuc Co. of Canada There are some salient documents that I'd like to briefly review with the court. Michael Faciane was a bank collections teller for Hibernia Bank. He sustained an on-the-job injury in 2006. He only had one arm and he severely injured the other arm and was rendered totally disabled. His benefits for long-term disability were approved by Sun Life in 2007. And the policy that Sun Life had provided that he had to challenge his benefit entitlement, what they had calculated as his monthly benefit, within three years of the proof of loss, which the district court found to be March of 2010 in granting the summary judgment. Initially, there was an exception, a 12B6 motion, and the court converted it to a summary judgment. The letter that the court relied on initially was there was a letter in the record March 31, 2008, where the monthly benefit was calculated. There was some dispute as to whether or not the claimant actually received it. I don't think that's outcome dispositive. At the time the letter was sent, the letter said, this is what we're doing right now and we're waiting on additional information. This is what we're going to pay you based on the information that we currently have. They did not include in the March 31, 2000 letter any information about appeal rights, 502 rights, or exhaustion of administrative remedies. So the claimant was receiving $100 a month because he was getting worker's comp and social security disability. So that situation continued and there's a DMAP exhibit in the excerpts, record excerpts, that discusses his frustration in dealing with the various claims people at Sun Life over the sequential period of time. But by April of 2011, he received a second letter and the second letter said that Sun Life had finally received information from the employer. Hibernia Bank had gone out of business. Capital One had taken over the business. So it took some period of time, Sun Life says, for them to get information from the employer that they were seeking about salary continuation and about an upgrade from 50% of his base pay to two-thirds of his base pay. Now that letter in April of 2011 did not mention exhaustion of administrative remedies. It did say that they were willing to consider additional information and it did mention his 502 rights in April of 2011. Now, if you would accept what the district judge held, that he had to file within three years of the proof of loss, it would have already been too late, despite the fact that there's an internal review, an internal audit, it would have already been too late for him to challenge his monthly benefits. The district court said, as a matter of law, borrowing from the Second and Third Circuit, that an ERISA miscalculation claim accrues when it's clear and known what the monthly amount is. Yes, sir. Okay. And so he says in that long footnote 28, he says that happened in 2008 and it definitely happened by 2011. Is he wrong factually or are you disagreeing with his clear repudiation rule? Do you accept that when a pensioner, whenever an insured person, a pensioner has clear knowledge of the calculation, that's when the clock starts? Your Honor, my contention is that there was no clear repudiation, there was no clear denial of his claim. So you accept the legal framework, you just say factually it wasn't clear? Or do you think it's got to be a continuing violation theory or a not till 27 when the appeal exhaustion occurs? What's your legal argument? Do you accept the clear repudiation rule? My legal argument is that it was not clear factually that, I do believe there was also a continuing violation, but it was not clear factually until 2017 when he received a letter when he hired counsel, counsel sent the paperwork, it was reviewed, additional changes were made in his benefits based on the settlement of the workers' compensation claim, and in 2017 they wrote him and said, look, this is the final denial, you've exhausted all administrative remedies, you have a right to go take this action to civil court. But I also disagree with the legal precept, Your Honor, that the three years from the proof of loss... It has to be a formal denial. It isn't, the clock doesn't start when the individual should have known because it was clear what the calculation is. It has to be a formal denial. That's your position or am I trying to put you in a box that you don't want to be in? It is my position, but it's not my only position relative to the applicable statute of limitations. Okay. All right. So I do believe, sir, that the, it wasn't denied in a sufficiently legal fashion until 2017 so that his right to file suit was still available to him under 502A. The circuit, I don't myself see circuit authority for that, but I think you would say the Ninth Circuit withdrawal decision would suggest there has to be a final formal denial. Or do you have another circuit that says that? I do not. I do not. So if the majority of circuits all say that the clock starts when it's clear and should have been known, if that majority circuit is the appropriate law, you still say factually it wasn't clear? I say factually it wasn't clear, but even if I give you that, even if I give you that by 2008 he knew or should have reasonably known as per Judge Afric's ruling, my argument would be that the analogous statute of limitations for the State of Louisiana under Civil Code Article 3499 is a 10-year statute of limitations for personal actions. And I would argue that if you look at the... And you argued this to Judge Afric? We strenuously argued the 10-year statute of limitations in our opposition at the district court. And if you look at the peace case cited by this court, as well as in the peace case, Your Honor, the court looked at the analogous state statute of limitations and this court, the Fifth Circuit in 1992, adopted that 10-year statute of limitations in a fairly analogous situation. Where someone knew in 1980 what their pension benefits were going to be, but didn't challenge it until eight or nine years later. And the court applied the 10-year Louisiana statute of limitations to that. And I think, I know that the dissent by Judge Owens also applied the Texas statute of limitations, the four-year statute of limitations, in a situation where that court found that the claim wasn't covered by ERISA. But in a lengthy dissent, she described her position that it was covered by ERISA, but that the case should have been dismissed for the claim being too late based on the Texas statute of limitations. So both of those cases applied the analogous statute of limitations of state law. So even if we accept Judge Afric's premise that I don't accept factually that 2008 was the right date, I say the claim was timely filed. The Supreme Court case in 2013 that is cited extensively, Himeshoff, for the proposition that Justice Thomas said that if the contractual provision is reasonable, it's enforceable. And in that case, the Connecticut statute of limitations was one year, and based on that statute of limitations, the court decided that it was reasonable to enforce a three-year provision in the contract. I would argue that the three-year provision in this contract from proof of loss was not reasonable because they continued the internal audit for substantial periods of time subsequent to that March 2010 period, adjusting his benefits multiple times later. I thought that was all relating to whether he had that buy-in plan. It had to do with the percentages, but… It did, Your Honor. It did. But they… The law doesn't show he ever misunderstood the monthly amount. It doesn't, but, you know, we weren't really given an opportunity. This started on an exception of 12b-6. We never had a day in court, as it were, relative to the fact that he was under psychiatric care at the time. He had a myriad of medical problems. We never really had an opportunity to argue equitable estoppel or other things that could have interrupted the period in the policy itself. But failing all of that, we don't accept that the Louisiana statute should not apply. Okay. And… Do you read the Supreme Court opinion that said they found the 3-year statute of limitation, the issue to be whether that was a reasonable period of time? Do you read that opinion to say that it's case by case of whether the period is reasonable? So your particular client's, your client's particular problems might have made 3 years unreasonable here and it might have been reasonable for somebody else? Or do you see it more as just whether that time period in order to bring a claim after there's been a clear repudiation, if that's what we find the right law is, this is a matter of law, 3 years will be a reasonable time period? Do you see it as that you can make an individual argument for your client that it's not reasonable to him as regardless of whether it's generally reasonable? Your Honor, we were never really given the opportunity to flesh out his medical situation. And we did document in the DMAP record that he expressed considerable frustration with trying to understand his interaction with the person at Sun Life. I probably wouldn't be clear. All I'm asking you is about what the law would be. And you're saying you didn't have a chance to show what the facts are relevant to the law. But do you read the Supreme Court 2013 opinion, whose pronunciation I won't take a run at, that reasonable means reasonable as to the individual claimant as opposed to just a reasonable time period in a generic way for all claimants in that State? I think you could argue it either way based on the verbiage in the opinion. I read it as if it's reasonable, it's likely enforceable, but we would be willing to consider exceptions based on the facts of the individual case. And at the very end of the opinion, Justice Thomas points out that whether it's equitable estoppel or other situations, that there are – I didn't see it as a hard and fast rule, Judge. Thank you. Any questions? Thank you. Good afternoon, Your Honor. It's Bernd Decker for Sun Life Assurance Company of Canada. Your Honor, ERISA is a statute that was enacted to balance a number of different interests. The Congress intended to, first of all, protect those contractually defined benefits that employers promise to employees. But since no employer has any obligation to provide any benefits in the first place, that, Congress said, had to be balanced against promoting the formation of benefits plans in the first place and encouraging employers to do so. And Congress did that by promulgating both an administrative and judicial scheme that is supposed to be predictable, efficient, and cost effective. And there are a number of different tenets that go into that. In Himeshoff, of course, the court characterized a linchpin of that system, that balancing act, as enforcing the terms of a plan as written, following the terms of the plan as written, as a linchpin to ERISA's balancing act enforcement scheme. Of course, there are other tenets that go into that, that also Himeshoff talked about, that are also pertinent to this case, which include the requirement that claimants be reasonably diligent about protecting their own rights. Of course, statute of limitations, by their very nature, also implicate that interest, as do court procedural laws about raising arguments in a timely manner, as such. This is a case where the claimant has failed to exercise reasonable diligence at every single level of the administrative and judicial process along the way. Now — Two issues that concern me. One is what is — if we don't have Fifth Circuit law that controls us, what is the appropriate accrual point? When I look at the law, it seems like it could be when a pensioner claims there's a miscalculation, it could be a continuing violation. Every time you give them less, that's a separate injury. It could be, no, it's the first payment, you had to catch it at the beginning. It could be when the pensioner should have known, which seems to be where most courts are gravitating. Or it could be only when there's a formal denial. Yeah. It's — accrual, of course, is only relevant in this context in terms of comparing the contractual limitations period with when you were able to sue and determining whether that's how much time you have. But that's the legal principle. But, yes. So the legal principle that applies is the one that Judge Affrick applied, and the one that makes, obviously, the most sense in this context. Advocates do seem protective of unwary pensioners, that when they're faced with complex formula — so why wouldn't that be here? You say he had every opportunity, but throughout he's challenging the percentage thing, and it is a complex formula. I'm just — this is devil's advocate, because somehow he's only getting $100 a month. But what was his monthly earning? $15,000 or something? No, $1,500? He contends his monthly — he contends his monthly earnings were $8,000 a month. But he did earn more than $100 a month. Right. But that's — But there are all sorts of things that are being subtracted out. There are offsets. There are lots of offsets, and — There are some. Okay. Good for you. Push back on that. But then there was constant confusion about percentages, 50 to 65, the buy-in plan problem. But none of that has — there's no confusion whatsoever about the total monthly earnings. There's no confusion whatsoever about the fact — And he thought, you know, he got a bonus after January, and that wasn't included. And in the end, Sun Life said, you're right about that. I'm just — I don't want to disturb the law that protects pensioners that just sort of trust their employer. They — okay, they're giving me what I probably was owed. And it is complex, and they are constantly complaining, which he was. So there is a body of law. What's the D.C. Circuit case? Kifafi? Kifafi? Remember that one? Okay. Or even the Ninth Circuit, Withrow. So I guess I'm just pushing you on why wasn't this sort of complex for an older layperson with a lot of disabilities, and he just didn't clearly know. Well, I mean, I think, again, the facts demonstrate that he clearly — he clearly did know, as Judge Afric articulated. But stepping back for a moment, Your Honor, the rule of law that the Third Circuit and the Second Circuit and Judge Afric and other circuits have applied is a very flexible one that is certainly amenable to a case-by-case analysis. So, I mean, it does go to when you reasonably should know that what you're saying, what you're claiming, is not the way that the company calculated it. And here, what he's saying — what he's saying — he's clearly saying here in the The documents he received and the conversations he had with Sun Life clearly stated that they calculated it as $5,000 a month. From 2008? From 2008 all the way through. That's right. Okay. And as of 2011, it would have actually changed his benefit — his monthly benefit if he was right, because the various offsets had come off. And now, if he was right about $8,000, he would have been getting $1,200 a month, not the $100. So even as of then, it would have changed his benefit determination. But as Judge Owen pointed out in the Peace case, and as the Court did accrual in the Kennedy case, which you directed us to, you know, accrual, when it's geared towards, you know, reasonably should know, can certainly take place before it affects the benefit. In both of those cases, in both of those cases, we were talking about — in the Peace case, it was an annuity. He wasn't going to get the annuity until he was 65. But the period started to run when he knew that when he turned 65, it wasn't going to get him the amount that he thought he should get. The other point about the rule of law and which one you should adopt, Your Honor, is that this contrary notion that it should be a final denial, in this context, what that means is there is no limitation. You essentially create your own limitation period. And no circuit's adopted that. No circuit has adopted that because it makes no sense. It's particularly in the ERISA context, Your Honor. Let me ask you. You're taking a position that is correct to look at 2008. Correct. But wasn't — didn't your client change the 50 percent, two-thirds in 2011? And so that was part of the dispute. Even though he may not have been disputing the monthly income, he was disputing something. So doesn't 2011 become the new statement by his son, life, such that that's the right date to start? No, Your Honor. I mean, of course, if you do start there, it doesn't matter. But it's good. We're talking about how to analyze what we had before. Right. But I think that would be erroneous for the reason that you've got to look at what he's arguing. What he's arguing is my total monthly earnings were $8,000. Even though that's the argument, and you didn't change that in 2011, you did change something. Correct. And so you're saying this is — we should look upon it as piecemeal. Let's say he's got three arguments. You resolve — or you stayed consistent starting in 2008 on one of them. So you're saying the calendar, day one, has already started on that argument because you never change it. Argument number two, you do change three years later. Three-year calendar starts then. Is that how you see this working, as opposed to an overall set of — of objections to what the plan — how it's being interpreted? And finally, when all those objections are resolved, you start the calendar. I see it as a former, Your Honor, because if you go to the latter, you are — you are dancing down the road of that — of that — of that problem of being able to create your own limitations, Peter. Well, but you just have one set of benefits. I mean, it changes because of — I don't know if it's disability payments or Social Security or what he was getting, but you finally go from $100 up to where it really matters what his monthly income was, and it didn't matter until then. But it does seem to me that once you resolve all these arguments, you have a set number that he's going to start being paid. And that's the end of the — that's when your clear repudiation of any remaining arguments may be. I don't know. I don't know. Does any case law address that, and — and either that it's not piecemeal or that it is piecemeal on the starting of the limitations period? Well, again, I think — I think Judge Owen's opinion in — in — in peace addressed that, and I think Miller and — and Novella and these other cases are clear about what you — what you're comparing things to. You're — you need to analyze what the argument is in court and then when he should have known that. Otherwise, you've got very difficult problems in trying to figure out when the statute accrues and when the — and when the period — when the period ends. Luckily here, Your Honor, it doesn't matter because, again, by 2011, you know, he — he — he knew exactly what Sun Life was calculating and that would have affected his — his benefit. But I think you're going down a dangerous road if you start to think about accrual in the sense of, you know, when it affects your — your — your benefit versus what's my argument in court and what — when did I know that that argument was repudiated. I think Miller makes that clear, and I think it's much more dicey if you try to — to analyze it in that — in that other way. One question. How can we resolve the 2008 date on summary judgment if he submitted a sworn letter that he didn't get that? So — Doesn't that just automatically create an issue of fact as to 2008 or not? It does not, Your Honor. I think — I think Judge Affleck analyzed that exactly right as well. I mean, receipt of a letter can be established through circumstantial — circumstantial evidence, and — It can be, but it's — And he found that it was, and that — that the affidavit just doesn't automatically create a genuine issue of material fact. In the face of an affidavit of following reasonable procedurals — procedures at some life to send the — to send the letter out, which was — was submitted in light of the — Log entries and all that. The claims entries and things of that nature. And again — I thought there were subsequent discussions that — that they agreed on the number even after 2008. Exactly right. I mean, in — in May of 2008, the notes say they talked about the total monthly earnings, and we explained how we calculated it, and he agreed. So again, there were — there were subsequent discussions along those lines. In terms of, you know, you raised the issue, Judge Higginson, of — of Withrow. I mean — No, I don't. I understand the Withrow case, I think. Well, then, if there are no further questions, we would ask that you affirm the judgment. Thank you. Just a couple of quick points. I think the notion that they changed his benefits in April of 2011 is confirmation of the fact that it would not be reasonable to enforce the contract, which said three years from proof of loss, which would have been 2010. They were still doing an internal audit, looking for information from the employer and from Mr. Fashion. That only pertained to the percentage that he got, didn't it? I mean, he was — at that point in time, he was not — It was a different issue. Yes. And they said, you provide from your employer this information, we'll give you the 66-something percent. And that — that came through. Yes, it did, Your Honor. But if you — if you said, well, we're going to look at that as the date we're going to enforce it, he wouldn't even have been entitled to get his percentage raised because that happened a year and a half later that they got information from the employer to raise his percentage, much less talk about his bonus. If you accept that their three-year period from the proof of loss, he wouldn't have been and the employer for, he wouldn't have been able to present those from — Well, an employer doesn't have to assert the limitations claim, do they? And, you know, this is a — different things happen at different points in time under these benefit plans. Yes. But — And that — he did not dispute for many, many years the 5,000-something — And he didn't — that gets back to when he knew or reasonably should have known, right? Right. The basic monthly benefit? Yes. And so my argument relative to that is very simple, and it's twofold. One, counsel would suggest to the court that, based on the DMAP, there's an alleged phone conversation with Mr. Fashion where they say he understood. That's an issue of fact. The judge didn't have an opportunity to hear Mr. Fashion's side of any of that. So I — Well, when did you put in the summary judgment papers about that? Pardon me? This is on summary judgment, right? Yes, ma'am. And what — how did you create a material fact? How did you say, we counter that with an affidavit? We did. And we said in the affidavit that he never got the letter, or he said he never got the letter. What about the telephone conversations? Did he dispute those? He did not dispute that he spoke with him on many occasions about his benefits. That was not addressed particularly. You're correct. That was not addressed particularly that he denied that he had agreed — Did he know what percentage they told him they were paying him, and he disputed that, right? Yes. So he could have put the math. He could have taken what percentage, looked at what he's getting, and see what the underlying number was. He would, from time to time, ask about it. Well, all he had to do is do the math every month when he gets the check. Isn't that right? That's correct. Okay, so he could have figured out easily what they thought his monthly earnings benchmark was. My last comment is, if the real standard, according to the court, is when did he know or should have known, that's a subjective inquiry, and it's an issue of fact. And I don't think the case was ripe for summary judgment. I think we should have had an opportunity to present what he knew, when he knew it, and what he did about it. Thank you.